UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

GLENDA FAYE HALL, on behalf of )
TONY WAYNE HALL, deceased )
(Social Security No. XXX-XX-9745), )
 )
        Plaintiff, )
 )
vs. ) 3:10-cv-143-RLY-WGH
 )
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL SECURITY, )
 )
        Defendant. )

**ENTRY ON JUDICIAL REVIEW**

**I. Background**

      Plaintiff, Tony Wayne Hall,[1] seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f). This court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] After Plaintiff filed his applications for SSI and DIB, but prior to his hearing before an ALJ, he was killed in an automobile accident on February 2, 2009. Plaintiff was not married. Plaintiff's mother, Glenda Faye Hall, replaced him as the interested party and continued the disability process. Pursuant to U.S.C. § 1383(b), a claimant's right to underpayments of Title XVI (SSI) generally extinguish upon the death of the claimant. *See also* C.F.R. § 416.542(b)(4). Therefore, the court only has jurisdiction over the Commissioner's final decision that the claimant was not entitled to DIB.

1

Plaintiff applied for DIB and SSI on May 12, 2008, alleging disability since April 24, 2008.[2] (R. 98-113). The agency denied Plaintiff's application both initially and on reconsideration. (R. 63-69, 75-77). On August 19, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff's mother, Glenda Hall, who was represented by counsel, Plaintiff's adult children, and a vocational expert testified. (R. 21-58). On September 4, 2009, the ALJ issued her opinion finding that, at the time of his death, Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the economy. (R. 11-20). After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-3). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on September 15, 2010, seeking judicial review of the ALJ's decision.

Plaintiff was 49 years old at the time of his death and had a high school education. (R. 18). His past relevant work experience included work as a packer (medium, unskilled), press operator (medium, unskilled), truck driver (heavy, semi-skilled), and roughneck (heavy, semi-skilled). (R. 18).

## II. Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42

---

[2] Plaintiff had alleged disability beginning March 1, 2008, in his SSI application, but it became apparent that he had continued to work until April 24, 2008 (R. 13); therefore, April 24, 2008, was used as his alleged onset date.

2

U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see also *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe

as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**III. The ALJ's Decision**

The ALJ concluded that Plaintiff had engaged in substantial gainful activity since the alleged onset date but his work ceased on April 24, 2008, so the ALJ considered this date as Plaintiff's alleged onset date; Plaintiff was insured for DIB through December 31, 2013. (R. 13). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had seven impairments that are classified as severe: morbid obesity; insulin dependent diabetes mellitus; diabetic peripheral neuropathy; history of pulmonary embolism; history of deep vein thrombosis; hypertension; and obstructive sleep apnea. (R. 13-14). The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). The ALJ determined that Plaintiff's complaints (including the testimony of his mother, and adult children) were not fully credible. (R. 15-17). The ALJ then found that Plaintiff retained the RFC for sedentary work, except he could: occasionally lift/carry 20 pounds and frequently lift/carry ten pounds; stand and/or walk at least two hours and sit six hours

in an eight-hour workday; occasionally climb ladders or stairs,[3] but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; and avoid concentrated exposure to hazards and unprotected heights. (R. 14). The ALJ determined that, based on this RFC, Plaintiff could not have performed his past work. (R. 18). However, at the time of his death, Plaintiff could have performed a significant number of jobs in the regional economy, including jobs as table worker (250 jobs), touch up cleaner (900 jobs), and surveillance system monitor (4,000 jobs). (R. 19). The ALJ, therefore, concluded that Plaintiff was not under a disability.[4] (R. 19-20).

## IV. Discussion

Plaintiff has raised three issues.

1. Whether the ALJ's credibility determination is patently wrong.

2. Whether the ALJ failed to give proper weight to Dr. Perkins' opinions.

3. Whether the RFC determination is supported by substantial evidence.

**Issue 1: Whether the ALJ's credibility determination is patently wrong.**

Plaintiff argues that the ALJ conducted a flawed credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's

---

[3]The court concludes that there was a typographical error in the ALJ's decision, and that the ALJ intended to adopt the RFC finding of the state agency physicians who found that Plaintiff could occasionally climb *ramps* or stairs.

[4]While Finding 11 of the ALJ's decision indicates that Plaintiff *was* under a disability (R. 19), the remainder of the ALJ's decision reveals that she intended to find Plaintiff *not* disabled. Therefore, the court concludes that this was, again, a typographical error.

"credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements

> about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added; footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*.

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ, here, conducted a very thorough assessment of Plaintiff's credibility at pages 15-17 in the record. She determined that Plaintiff's allegations, as well as the

testimony of his mother and adult children, were not fully credible and gave the testimony little weight. She based this decision on numerous factors, including: (1) that Plaintiff had been noncompliant; (2) that Plaintiff's family testified he was suffering from severe mental health problems, including depression, but Plaintiff had sought no mental health treatment whatsoever; (3) that contrary to Plaintiff's mother's claim that Plaintiff's diabetes was out of control, the objective medical evidence actually indicated Plaintiff's diabetes was well controlled; (4) that there was no objective medical evidence that demonstrated that Plaintiff was suffering from any side effects from medication; and (5) that the testimony at Plaintiff's hearing was generally unsupported by the objective medical evidence. After a careful examination of the record, the court concludes that the ALJ's credibility determination was certainly not patently wrong.

Plaintiff argues that the ALJ erred because she wrongly concluded that Plaintiff had been noncompliant. However, there is clearly evidence in the record of noncompliance. In fact, there is simply no record of any treatment of any kind that Plaintiff received prior to his April 2008 hospitalization for a pulmonary embolism, despite the fact that Plaintiff was morbidly obese and suffered from insulin dependent diabetes. The record indicates that Plaintiff had no choice after his pulmonary embolism but to begin taking the appropriate doses of insulin to treat his diabetes. The high doses of insulin, Plaintiff admits, resulted in him losing his truck driving license and being terminated from his job as a truck driver. Plaintiff stated during his hospitalization for the pulmonary embolism that he had just returned from a trip to Miami, Florida, immediately before his hospitalization. Therefore,

the evidence reveals Plaintiff was perfectly capable of performing an extremely strenuous job immediately before his hospitalization, and his impairments were a direct result of his noncompliance. Additionally, in the nine months between Plaintiff's hospitalization and his unfortunate death in February 2009, he continued to smoke (although he alleged in medical records that he had cut his smoking down to five cigarettes a day), and he did not lose any substantial amount of weight during this time frame. Plaintiff argues that the ALJ was wrong to find Plaintiff noncompliant in view of a medical record that says he had recently lost 50 pounds. Yet, the entirety of the objective medical evidence reveals that, from his hospitalization in April 2008, until November 2008 – the last record evidence of weighing – Plaintiff weighed consistently between 360 and 365 pounds. Thus, any argument that Plaintiff had begun to become compliant with the doctor's instructions to lose weight by losing 50 pounds is unfounded. Consequently, the ALJ did not err when she found that Plaintiff was noncompliant.

Plaintiff also claims that it was error when the ALJ rejected testimony by his family at the hearing, but the ALJ was not patently wrong for rejecting this testimony. For instance, the claim that Plaintiff had weighed over 400 pounds in the last year of his life is not supported by the objective medical evidence. Additionally, the claim that Plaintiff was suffering from severe depression has no objective medical support. Plaintiff's mother claimed that he could not afford treatment, but this too is not supported by the record. Plaintiff was being prescribed several medications and attended numerous doctor visits over the last nine months of his life; the record also indicates that he was on Medicare. Because

9

the testimony at Plaintiff's hearing was not supported by the objective medical evidence, the ALJ was not patently wrong when she found that testimony not credible.

**Issue 2: Whether the ALJ failed to give proper weight to Dr. Perkins' opinions.**

Next, Plaintiff argues that the ALJ should have given more weight to the opinions of consultative examiner, Dr. Perkins, rather than the opinions of state agency physicians who never examined Plaintiff. 20 C.F.R. § 404.1527 provides guidance for how the opinions of treating and nontreating sources are to be evaluated and explains as follows:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we

give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty

than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527.

Plaintiff alleges that the ALJ should have given great weight to Dr. Perkins' opinions that Plaintiff's ability to stand, move about, lift, carry, and handle objects was impaired; that Plaintiff's exercise tolerance was less than four minutes; and that Plaintiff's prior deep vein thrombosis put him at high risk for sudden death. However, Dr. Perkins' exam of Plaintiff actually reveals that Plaintiff had no deficits in his ability to lift, carry, or handle objects. Plaintiff had normal strength in all extremities, including normal grip strength. (R. 244). Additionally, Plaintiff was routinely tested for deep vein thrombosis during the nine-month period at issue in this case, and he was negative on each occasion. Several other doctors examined Plaintiff over this period and did not indicate that Plaintiff was limited to the extent that Dr. Perkins articulated. Finally, two state agency physicians reviewed all of the objective medical evidence, including the results of Dr. Perkins' exam, and concluded that Dr. Perkins' opinions were not supported by her examination of the Plaintiff or the entirety of the objective medical record. In light of the fact that Dr. Perkins only examined Plaintiff

12

on one occasion, she was clearly not a treating physician and her opinions were not entitled to controlling weight. Furthermore, Dr. Perkins' exam of Plaintiff did not reveal that Plaintiff was as limited as she opined, and other doctors did not find such severe limitations. The court, therefore, concludes that the ALJ was justified in giving Dr. Perkins' opinions little weight.

**Issue 3: Whether the RFC determination is supported by substantial evidence**.

Finally, Plaintiff found fault with the ALJ's RFC determination because it did not include the limitations given by Dr. Perkins. As discussed above, the ALJ was justified in granting little weight to Dr. Perkins' opinions. Consequently, such opinions did not need to be incorporated into the ALJ's RFC determination. In light of the totality of the objective medical evidence, as well as the opinions of the two state agency physicians, the ALJ's RFC determination was reasonable. The ALJ took into consideration Plaintiff's impairments and limited him to a very reduced range of sedentary work. This RFC is supported by substantial evidence and must be affirmed.

**V. Conclusion**

The ALJ's credibility determination in this case was not patently wrong. Additionally, the ALJ was justified in granting little weight to the opinions of Dr. Perkins. Finally, the ALJ's RFC determination is supported by substantial evidence. The decision of

the Commissioner of the Social Security Administration is **AFFIRMED.**

**SO ORDERED** the 30th day of September 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronic copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Bradley P. Rhoads
RHOADS & RHOADS PSC
brad@rhoadsandrhoads.com